# EXHIBIT B

| | | Loan Number _ ......... 81 / 12 |
|---|---|---|
| TURAS, LLC DBA BELLA VIAGGIA<br>434 S GROVE PARK RD<br>MEMPHIS, TN 38117 | TRUST ONE BANK<br>1715 AARON BRENNER DR<br>MEMPHIS, TENNESSEE 38120 | Date_____ 05/07/2010<br>Maturity Date ___ 05/15/2015<br>Loan Amount $ __ 100000.00<br>Renewal Of _____ |
| **BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally. | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | Soc. Sec. # |

For value received, I promise to pay to you, or your order, at your address listed above the **PRINCIPAL** sum of _____
**ONE HUNDRED THOUSAND DOLLARS AND ZERO CENTS** _____ Dollars $ 100,000.00 _____

☒ **Single Advance:** I will receive all of this principal sum on May 07, 2010 _____. No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
I will receive the amount of $ _____ and future principal advances are contemplated.
**Conditions:** The conditions for future advances are _____

☐ **Open-End Credit:** You and I agree that I may borrow under this note, prepay this note in whole or in part, and borrow again under this note, so long as the aggregate unpaid principal amount owed under this note at any time does not exceed the amount of the principal sum set forth above. My right to borrow is subject to all other conditions of this note and expires on _____ .☐
**Closed-End Credit:** You and I agree that I may borrow in the aggregate an amount not to exceed the principal sum shown above. Amounts I repay under this note may not be reborrowed later. My right to borrow is subject to all other conditions and expires on _____ .

**INTEREST:** I agree to pay interest on the outstanding principal balance from May 07, 2010 at the rate of 6.500000 % per year until
the index rate changes _____ .

☒ **Variable Rate:** This rate may then change as stated below.

☒ **Index Rate:** The future rate will be 2.000 % ABOVE the following index rate: _____
Lender's Prime, which is the base rate used by Lender to set interest rates at which loans are made to various
customers. Loan may be made at, above or below said prime rate.

☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

☒ **Frequency and Timing:** The rate on this note may change as often as DAILY _____
A change in the interest rate will take effect WHEN THE INDEX RATE CHANGES _____

☒ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than
6.50 %. The rate may not change more than _____ % each _____ .

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
☒ The amount of each scheduled payment will change.          ☐ The amount of the final payment will change.
☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a ACTUAL # DAYS/360 -DAY YEAR basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
☐ on the same fixed or variable rate basis in effect before maturity (as indicated above).
☒ at a rate equal to 21.00 _____

☒ **LATE CHARGE:** I agree to pay a late charge on the portion of any payment not made within 10 days after it is due equal to _____
5% of the unpaid amount with a minimum of $100.00 _____

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☐ are ☒ are not included in the principal amount above: SEE DISBURSEMENT AUTHORIZATION _____

**PAYMENTS:** I agree to pay this note as follows:
☒ **Interest:** I agree to pay accrued interest MONTHLY Beginning June 15, 2010 _____

☒ **Principal:** I agree to pay the principal 1666.67 MONTHLY Beginning June 15, 2010 _____
Balance Due May 15, 2015

☐ **Installments:** I agree to pay this note in _____ payments of principal and interest. The first payment will be in the amount of $ _____
_____ and will be due _____ . A payment of $ _____ will be due
_____ thereafter. The final payment of the entire
unpaid balance of principal and interest will be due _____

☐ **Unpaid Interest:** Any accrued interest not paid when due (whether due by reason of a schedule of payments or due because of Lender's demand) will become part of the principal thereafter, and will bear interest at the interest rate in effect from time to time as provided for in this agreement.

**ADDITIONAL TERMS:** THE PERSONAL GUARANTY OF DONAL M MCDONAGH & MICHELE R MCDONAGH

| | |
|---|---|
| ☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):<br>DEED OF TRUST DATED 05/07/10<br>2416 SANDERS RIDGE LANE, GERMANTOWN, TN<br>38138 IN SHELBY COUNTY TENNESSEE<br>(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.) | **PURPOSE:** The purpose of this loan is _____<br>REFI BUS CREDIT CARD DEBT _____<br>**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2).** I have received a copy on today's date.<br><br>Signature for Borrower(s)<br>TURAS, LLC DBA BELLA VIAGGIA<br><br>DONAL M MCDONAGH     MEMBER<br><br>MICHELE R MCDONAGH    MEMBER |

Signed _____ (Optional) _____ For Lender
Officer's Name _____ Ken Whitsitt 8176161

UNIVERSAL NOTE                                                                                          (page 1 of 2)
Experte © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-TN 3/7/2002 Custom 11/12/02   MOF.ETNUN

**DEFINITIONS:** As used on page 1, "☒" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns. All references to "this note" or "this agreement" or "this loan" shall mean this Universal Note.

**APPLICABLE LAW:** This note will be governed by the laws of the United States, and to the extent not inconsistent therewith, the laws of the State of Tennessee. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. You and I may provide in this agreement for accrued interest not paid when due to be added to principal. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the interest rate on this note. You do not guarantee by selecting this index, or the margin, that the interest rate on this note will be the same interest rate you charge on any other loans or class of loans to me or other borrowers, or that it is the lowest rate charged on any type of loan by you.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier. Nothing contained herein shall be construed as a commitment to extend or renew or as an acquiescence to any failure to make any payment when due.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below, or if we have agreed that accrued interest not paid when due may be added to principal.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set-off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set-off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment under this note on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default under the terms of this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
(2) You may set-off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts due have not been paid (notice of dishonor).

I waive any defenses I have based on suretyship or impairment of collateral. To the extent permitted by law, I also waive all personal property exemptions in the property securing this loan.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of this note. I will not assign my obligation under this agreement without your prior written approval.

**CREDIT INFORMATION:** I agree and authorize you to obtain credit information about me from time to time (for example, by requesting a credit report) and to report to others your credit experience with me (such as a credit reporting agency). I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

**RECORD RETENTION:** I acknowledge and agree that you may from time to time retain information about me and documents I sign, including, but not limited to, this note and documents related to this note (collectively, not limited to, this note and documents related to this note (collectively, the "documents") electronically (such as in optical, digital or other electronic storage and retrieval system) and destroy the original documents. You and I agree and intend that any copy of any document produced by us from the electronic media shall have the legal force and effect as the original documents for all purposes and in all circumstances, including, but not limited to, collection, admissibility, authentication, or any other legal purpose.

Experi® © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-TN 3/7/2002 Custom 11/12/02   MDF-ETNUN



This document was prepared by _____

BR1   BRANCH 001
The MAXIMUM PRINCIPAL INDEBTEDNESS for Tennessee
Recording Tax Purposes is __100000.00_____ .

*Prepared By:*
RETURN TO:
MID SOUTH TITLE SERVICES, LLC
6305 Humphreys Boulevard, Suite 108
Memphis, TN  38120
STEWART #10040515
MEH #2010040372

———————State of Tennessee———————————————— Space Above This Line For Recording Data ————

# REAL ESTATE DEED OF TRUST
### (With Future Advance Clause)

☐ This is a construction mortgage within the meaning of Tenn. Code Ann. § 47-9-334(h).

This instrument secures, among other things, an obligation or obligations incurred for the construction of an improvement on the hereinafter described Property and including the acquisition cost of the land.

This Security Instrument secures obligatory advances for commercial purposes, as more particularly hereinafter described.

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is __05/07/2010_____ and the parties, their addresses and tax identification numbers, if required, are as follows:

    GRANTOR (its successors and assigns):
    DONAL M MCDONAGH
    MICHELE R MCDONAGH
    2416 SANDERS RIDGE LANE
    GERMANTOWN    TN    38138-

    TRUSTEE (said term referring always to the named Trustee and its successors in trust):

    DAVID DODSON
    1715 AARON BRENNER DRIVE
    MEMPHIS, TN 31820

    LENDER (its successors and assigns, said term referring always to the lawful owner and holder of the Secured Debt (as hereinafter defined)):

    TRUST ONE BANK
    1715 AARON BRENNER DR
    MEMPHIS, TN 38120

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys, bargains, transfers, sets over, and sells to Trustee and the successor and assigns of Trustee, in trust for the benefit of Lender, with power of sale, the following described property:

    SEE ATTACHED EXHIBIT "A" FOR COMPLETE LEGAL DESCRIPTION

TENNESSEE - AGRICULTURAL/COMMERCIAL REAL ESTATE SECURITY INSTRUMENT
(NOT FOR FNMA, FHLMC, FHA OR VA USE, AND NOT FOR CONSUMER PURPOSES)
Expere® © 1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-TN 6/17/20
Custom 7/14/05 SNV00102

MM                                                    *(page 1 of 11)*

The property is located in _SHELBY_ _____ at _____
(County)

_2416 SANDERS RIDGE LANE_ , _GERMANTOWN_ , Tennessee _38138_
(Address)                        (City)                      (Zip Code)

Together with all estates, tenements, hereditaments, interests, rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers, all water and riparian rights, wells, ditches, reservoirs, and water stock and all existing and future improvements, structures, fixtures, personal property, rents, issues, profits, revenues, income, accounts and general intangibles and replacements, and proceeds, including, without limitation, insurance proceeds, that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

TO HAVE AND TO HOLD the Property to the use and benefit of Trustee, and the successors and assigns of Trustee, forever, IN TRUST, to secure the Secured Debt, as defined below.

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ ____100000.00____ . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.
NOTICE: Pursuant to Tenn. Code Ann. § 47-28-105, Grantor may reduce the limit on the maximum amount of total principal indebtedness to be secured under an Open End Mortgage Security Instrument (see OTHER TERMS section).

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below please include a complete description of the instrument secured, including the name of the instrument, borrower's names, note amounts, interest rates, maturity dates, etc.)*
   PROMISSORY NOTE DATED 05/07/10 IN THE AMOUNT OF $100,000.00

   TO TURAS, LLC DBA BELLA VIAGGIA

   B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.
   C. All obligations Grantor owes to Lender, which now exist or may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.
   D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument, including, without limitation, attorneys' fees.
   This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Grantor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Grantor warrants that Grantor is lawfully seized and possessed of the estate conveyed this Security Instrument and has good right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record. Grantor does warrant and will forever defend the title to the Property against the claims of all persons whomsoever except as to matters of record.

*(page 2 of 11)*

Experé © 1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-TN 6/17/2002
Custom 7/14/05 SNV00102

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Grantor receives from the holder.
   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **TRANSFER OF AN INTEREST IN THE GRANTOR.** If Grantor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if:
    A. A beneficial interest in Grantor is sold or transferred.
    B. There is a change in either the identity or number of members of a partnership or similar entity.
    C. There is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity.
    However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Security Instrument.

11. **ENTITY WARRANTIES AND REPRESENTATIONS.** If Grantor is an entity other than a natural person (such as a corporation or other organization), Grantor makes to Lender the following warranties and representations which shall continue as long as the Secured Debt remains outstanding:
    A. Grantor is duly organized and validly existing in the Grantor's state of incorporation or organization. Grantor is in good standing in all states in which Grantor transacts business. Grantor has the power and authority to own the Property and to carry on its business as now being conducted and, as applicable, is qualified to do so in each state in which Grantor operates.
    B. The execution, delivery and performance of this Security Instrument by Grantor and the obligation evidenced by the Secured Debt are within the power of Grantor, have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law, or order of court or governmental agency.
    C. Other than previously disclosed in writing to Lender, Grantor has not changed its name within the last ten (10) years and has not used any other trade or fictitious name. Without Lender's prior written consent, Grantor does not and will not use any other name and will preserve its existing name, trade names and franchises until the Secured Debt is satisfied.

12. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property. Grantor will comply with all present and future applicable law affecting the Property.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Grantor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Security Instrument. Grantor shall not partition or subdivide the Property without Lender's prior written consent.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

*(page 3 of 11)*

Experts® © 1994, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RESI-TN  6/17/2002
Custom 7/14/05  SNV00102

Case 12-27642    Doc 33-2    Filed 11/20/12    Entered 11/20/12 14:30:40    Desc Exhibit
B - Note 2 and EXQ with Registration Deeds Page #7 0049033
To R Leatherwood in Shelby County Register of Deeds Page #7 1 of 20

13. **ASSIGNMENT OF LEASES AND RENTS.** As additional collateral for the Secured Debt, Grantor assigns to Lender all of Grantor's right, title and interest in and to any and all leases, tenant contracts, rental agreements and similar agreements now or hereafter affecting the Property or any part thereof, together with any and all corresponding rents, issues, profits, revenues, income, accounts, and general intangibles ("Lease"). Without first obtaining Lender's prior written consent, Grantor shall not cancel or modify any Lease, or accept or permit to be made any prepayment of any rent or fees thereunder, and shall faithfully keep and perform all covenants, conditions and agreements contained in each of said Lease on the part of Grantor and shall at all times do all things necessary to compel performance by each other party to said Lease of all obligations, covenants and agreements by such other party to be performed thereunder. Upon the occurrence of any default hereunder or under any other instrument or document now or hereafter further evidencing, securing or otherwise related to the indebtedness secured hereby, Lender may (1) perform any and all obligations of Grantor under any or all of the Lease and exercise any and all rights of Grantor thereunder, (2) in Grantor's or Lender's name, institute any legal or equitable action that Lender in its sole discretion deems desirable to collect and receive any and all of the rents, issues, profits, revenues and income assigned herein, and (3) collect the rents, issues, profits, revenues and income and any other sums due under the Lease and apply the same, in such order of priority as Lender shall determine in its sole discretion, to all costs and expenses including reasonable attorneys' fees incurred in connection with the operation of the Property, all costs and expenses including reasonable attorneys' fees incurred in the collection of the indebtedness secured hereby, and any and all unpaid principal of and interest on the Secured Debt.

14. **AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney-in-fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

15. **LEASEHOLDS; CONDOMINIMUMS; PLANNED UNIT DEVELOPMENTS.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

16. **DEFAULT.** Grantor will be in default if any of the following occur:
   A. Any party obligated on the Secured Debt fails to make payment when due;
   B. A breach of any term or covenant in this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt;
   C. The making or furnishing of any verbal or written representation, statement or warranty to Lender that is false or incorrect in any material respect by Grantor or any person or entity obligated on the Secured Debt;
   D. The death, dissolution, or insolvency of, appointment of a receiver for, or application of any debtor relief law to, Grantor or any other person or entity obligated on the Secured Debt;
   E. A good faith belief by Lender at any time that Lender is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment is impaired or the value of the Property is impaired;
   F. A material adverse change in Grantor's business including ownership, management, and financial conditions, which Lender in its opinion believes impairs the value of the Property or repayment of the Secured Debt; or
   G. Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

17. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default. Grantor waives notice or demand prior to acceleration.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, without notice or demand, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents including, without limitation, the power to sell the Property.

ExpereÌ © 1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-TN 6/17/2007
Custom 7/14/05 SNV00102

*(page 4 of 11)*

If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public outcry of the Property to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates after advertising the sale at least three (3) different times in some newspaper published in the county in which the sale is to be made, the first of which publications shall be at least twenty (20) days previous to said sale. Trustee shall give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale.

In the event of any sale under this Security Instrument by virtue of the exercise of the power herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Property may be sold as an entirety or in separate parcels and in such manner or order as Lender in its sole discretion may elect, and one or more exercises of the power herein granted shall not extinguish or exhaust such power until the entire Property is sold or the Secured Debt is paid in full. Any sale hereunder may be postponed by Trustee and reset at a later date without additional publication, provided that an announcement to that effect be made at the scheduled place of sale at the time and on the date the sale is set, either originally or by prior announcement of postponement.

In the event of any sale hereunder, Grantor and all persons holding thereunder shall be and become tenants at will of the purchaser, said tenancy to be terminable at the option of the purchaser immediately upon notice from the purchaser.

Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor or party or entity lawfully entitled thereto. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

If there is a default, upon application to a court of competent jurisdiction, Grantor shall be entitled as a matter of right, without notice and without regard to the occupancy or value of any security for the Secured Debt or the solvency of any party bound for its payment, to the appointment of a receiver to take possession of and to operate the Property and to collect and apply the rents, issues, profits, and revenues thereof. The receiver shall have all the rights and powers permitted under the laws of the State of Tennessee. Grantor will pay to Lender, upon demand, all expenses, including receivers' fees, attorneys' fees, costs and agents' compensation, and any such amounts shall be a Secured Debt secured by this Security Instrument.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

18. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released.

19. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et. seq.); all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Experts® © 1994, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RESI-TN 6/17/2004
Custom 7/14/05  SNV00102

*(page 5 of 11)*

Grantor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

B. Except as previously disclosed and acknowledged in writing to Lender, Grantor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

C. Grantor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Grantor will take all necessary remedial action in accordance with Environmental Law.

D. Except as previously disclosed and acknowledged in writing to Lender, Grantor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Grantor or any tenant of any Environmental Law. Grantor will immediately notify Lender in writing as soon as Grantor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

E. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are and shall remain in full compliance with any applicable Environmental Law.

F. Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

G. Grantor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

H. Grantor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Grantor and any tenant are in compliance with applicable Environmental Law.

I. Upon Lender's request and at any time, Grantor agrees, at Grantor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

J. Lender has the right, but not the obligation, to perform any of Grantor's obligations under this section at Grantor's expense.

K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Grantor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Security Instrument and in return Grantor will provide Lender with collateral of at least equal value to the Property secured by this Security Instrument without prejudice to any of Lender's rights under this Security Instrument.

L. Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section shall survive any foreclosure or satisfaction of this Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

20. **CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

21. **INSURANCE.** Grantor agrees to maintain insurance as follows:

A. Grantor shall keep the Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

*(page 6 of 11)*

Exßere® © 1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-TN
Custom 7/14/05  SNV00102

B. During the course of any construction or repair of the Property, Grantor shall maintain builders' risk insurance against loss or damage by such hazards as are presently included in so-called "all-risk" coverage, and such other hazards as required by Lender, in an amount not less than the full insurable value of such improvements.

C. All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause", and shall include a requirement for notice to Lender at least thirty (30) days prior to cancellation or material change. Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

D. Unless otherwise agreed in writing, all insurance proceeds shall be applied to restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of scheduled payment nor change the amount of any payments. Any excess will be paid to the Grantor, or party or entity lawfully entitled thereto. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

E. Grantor agrees to maintain comprehensive general liability insurance naming Lender as an additional insured in an amount acceptable to Lender, insuring against claims arising from any accident or occurrence in or on the Property.

F. Grantor agrees to maintain rental loss or business interruption insurance, as required by Lender, in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing), under a form of policy acceptable to Lender.

22. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

23. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

24. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

25. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

26. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

27. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

*(page 7 of 11)*

Experts® © 1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-TN 6/17/2002
Custom 7/14/05  SNV00102

28. **WAIVERS.** Except to the extent prohibited by law, Grantor waives all current and future homestead exemption, curtesy and dower, elective or distributive share, valuation, stay, appraisement and marshalling of liens and assets rights relating to the Property. In addition, to the extent not prohibited by law, Grantor expressly waives all statutory rights of redemption, equities of redemption, reinstatement, forbearance or moratorium laws.

29. **U.C.C. PROVISIONS.** If checked, the following are applicable to, but do not limit, this Security Instrument:

☐ **Fixture Filing.** Grantor grants to Lender a security interest in all personal property or equipment that Grantor owns now or in the future and that are or will become fixtures related to the Property.

☐ **Crops; Timber; Minerals; Rents, Issues, and Profits.** Grantor grants to Lender a security interest in all crops, timber, and minerals located on the Property as well as all rents, issues, and profits of them including, but not limited to, all Conservation Reserve Program (CRP) and Payment in Kind (PIK) payments and similar governmental programs (all of which shall also be included in the term "Property").

☐ **Personal Property.** Grantor grants to Lender a security interest in all personal property located on or connected with the Property, including all farm products, inventory, equipment, accounts, documents, instruments, chattel paper, general intangibles, and all other items of personal property Grantor owns now or in the future and that are used or useful in the construction, ownership, operation, management, or maintenance of the Property (all of which shall also be included in the term "Property"). The term "personal property" specifically excludes that property described as "household goods" secured in connection with a "consumer" loan as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices.

☐ **Filing.** Grantor irrevocably authorizes Lender at any time and from time to time to file one or more financing statements pursuant to the UCC, in form satisfactory to Lender, describing the Property. Such description of the Property may identify the Property as (i) all assets of Grantor or words of similar effect, regardless of whether any particular asset comprised in the Property falls within the scope of Article 9 of the UCC, or (ii) as being of an equal or lesser scope or with greater detail. Grantor ratifies its authorization for Lender to have filed in any UCC jurisdiction any like initial financing statements or amendments thereto if filed prior to the date hereof. Grantor further authorizes Lender to file one or more financing statements describing any agricultural liens or other statutory liens held by Lender.

☐ **No Statutory Liens.** Grantor shall not suffer any mechanics, materialsmen, laborers, statutory or other lien to be created against the Property. Lender does not consent to any lien superior to the lien hereof, either under Tenn. Code Ann. Section 66-11-108, as now or hereafter amended, or otherwise.

☐ **Maximum Rate.** This agreement is expressly limited so that in no event whatsoever, whether by reason of advancement of proceeds hereof, acceleration of maturity of the unpaid balance hereof or otherwise, shall the amount paid or agreed to be paid to Lender for the use of the money advanced or to be advanced hereunder exceed the amount collectible at the maximum rate of interest allowed by applicable law. Any excess payments shall be credited to any amounts due hereunder or refunded to Grantor.

☐ **OWNER-OCCUPIED RESIDENCE.** PURSUANT TO THE PROVISIONS OF T.C.A. SECTION 47-18-2404, AND TO THE EXTENT THAT THE LOAN OR INDEBTEDNESS IS SECURED BY THE OWNER-OCCUPIED RESIDENCE OF GRANTOR, PLEASE BE ADVISED AS FOLLOWS:
(A) FAILURE TO MAKE TIMELY PAYMENTS OR TO REPAY THE LOAN WILL RESULT IN THE GRANTOR'S HOME BEING SUBJECT TO FORECLOSURE.
(B) ADDITIONAL INFORMATION ON DEBT CONSOLIDATION LOANS IS AVAILABLE FROM THE TENNESSEE DEPARTMENT OF COMMERCE & INSURANCE, DIVISION OF CONSUMER AFFAIRS AT 1-800-342-8385.
IN ADDITION, IT IS THE OBLIGATION OF THE GRANTOR TO MAKE PAYMENTS TO PRIOR LENDERS.

BY SIGNING BELOW, GRANTOR REPRESENTS AND WARRANTS THAT HE/SHE HAS READ THE FOREGOING COMPLETELY AND UNDERSTANDS THE INFORMATION CONTAINED HEREIN.

**30. OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Open End Mortgage.** This Security Instrument is an "Open End Mortgage" as defined under Tenn. Code Ann. § 47-28-101, et. seq. The Secured Debt is due and payable on _____ if not paid earlier. The due date may not be more than thirty (30) years after the date of the Secured Debt. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

☐ **Commercial Purpose Obligatory Advances.** This Security Instrument secures obligatory future advances for commercial purposes.

☐ **Agricultural Property.** Grantor covenants and warrants that the Property will be used principally for agricultural or farming purposes and that Grantor is an individual or entity allowed to own agricultural land as specified by law.

☐ **Additional Terms.**

**SIGNATURES:** By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

Entity Name: DONAL M MCDONAGH

By: _____

Title: _____

(Signature)      MAY 07 2010      (Date)

_____

(Signature)      (Date)

Entity Name: MICHELE R MCDONAGH

By: _____

Title: _____

(Signature)      MAY 07 2010      (Date)

_____

(Signature)      (Date)

**INDIVIDUAL ACKNOWLEDGMENT:**

STATE OF TENNESSEE
COUNTY OF _____ SHELBY _____

Personally appeared before me, the undersigned, a Notary Public of the State and County aforesaid, _____ DONAL M. McDONAGH _____, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged that ___ he executed the within instrument for the purposes therein contained.

WITNESS my hand, at office, this ___7th___ day of ___May___ 2010 _____

My Commission Expires: ___7-27-11___ _____
(Notary Public)

(page 9 of 11)

© 1994, 2001 Bankers Systems, Inc., St. Cloud, MN .Form AGCO-RESI-TN. 6/17/2002 Custom 7/14/05 GSNV00102

Case 12-27642   Doc 33-2   Filed 11/20/12   Entered 11/20/12 14:30:40   Desc Exhibit
B - Note 2 and DOT with Guaranties Deed - Inst. #10049183
Tom Leatherwood, Shelby County Register of Deeds Page 13 of 20

INDIVIDUAL ACKNOWLEDGMENT:

STATE OF TENNESSEE
COUNTY OF _____SHELBY_____

Personally appeared before me, the undersigned, a Notary Public of the State and County aforesaid,_____
MICHELE R. McDONAGH _____ , with whom I am personally acquainted (or proved to me on the
basis of satisfactory evidence), and who, upon oath, acknowledged that s__ he executed the within instrument
for the purposes therein contained.

WITNESS my hand, at office, this ___7th___ day of ____May____ _____2010_

My Commission Expires: _____7-27-11_____          (Notary Public)

_____          INDIVIDUAL ACKNOWLEDGMENT:

STATE OF TENNESSEE
COUNTY OF _____

Personally appeared before me, the undersigned, a Notary Public of the State and County aforesaid,_____
_____ , with whom I am personally acquainted (or proved to me on the
basis of satisfactory evidence), and who, upon oath, acknowledged that ___ he executed the within instrument
for the purposes therein contained.

WITNESS my hand, at office, this _____ day of_____ , _____ ,

My Commission Expires: _____          _____
                                                  (Notary Public)

_____          INDIVIDUAL ACKNOWLEDGMENT:

STATE OF TENNESSEE
COUNTY OF _____

Personally appeared before me, the undersigned, a Notary Public of the State and County aforesaid,_____
_____ , with whom I am personally acquainted (or proved to me on the
basis of satisfactory evidence), and who, upon oath, acknowledged that ___ he executed the within instrument
for the purposes therein contained.

WITNESS my hand, at office, this _____ day of_____ , _____ ,

My Commission Expires: _____          _____
                                                  (Notary Public)

_____

Experts® © 1994, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RESI-TN 6/12/2002
Custom 7/14/05  SNV00102

STATE OF TENNESSEE                                    BUSINESS OR ENTITY ACKNOWLEDGMENT:
COUNTY OF _____

    Before me, the undersigned, a Notary Public of the State and County aforesaid, personally appeared_____
_____ , with whom I am personally acquainted (or proved to me on the basis of
satisfactory evidence), and who, upon oath, acknowledged___self to be the _____of_____
_____, the within named bargainor, a_____ , and that ___ he as such _____
_____executed the foregoing instrument for the purposes therein contained, by signing the name of the
_____ by ____ self as such _____.

    WITNESS my hand and seal, at office in_____, this _____ day of_____._____ .

My Commission Expires: _____        _____
                                                   (Notary Public)

STATE OF TENNESSEE                                    BUSINESS OR ENTITY ACKNOWLEDGMENT:
COUNTY OF _____

    Before me, the undersigned, a Notary Public of the State and County aforesaid, personally appeared_____
_____ , with whom I am personally acquainted (or proved to me on the basis of
satisfactory evidence), and who, upon oath, acknowledged___self to be the _____of_____
_____, the within named bargainor, a_____ , and that ___ he as such _____
_____executed the foregoing instrument for the purposes therein contained, by signing the name of the
_____ by ____ self as such _____.

    WITNESS my hand and seal, at office in_____, this _____ day of_____._____ .

My Commission Expires: _____        _____
                                                   (Notary Public)

STATE OF TENNESSEE                                    POWER OF ATTORNEY ACKNOWLEDGMENT:
COUNTY OF _____

    On this the _____day of _____ , _____, before me personally appeared _____
_____ , with whom I am personally acquainted (or proved to me on the basis of
satisfactory evidence), to be the person who executed the foregoing instrument on behalf of _____
_____ , acknowledged that such person executed the same as the free act and deed of _____
_____ , evidenced by that certain Power of Attorney of record in Book _____, page
_____ , in the Registers Office for _____ County, Tennessee.

    WITNESS my hand, at office, this_____ day of_____, _____.

My Commission Expires: _____        _____
                                                   (Notary Public)

Please return this document after recording to: _____
Mail Tax Bills to: _____
                                                                         (page 11 of 11)

Experse® © 1994, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RESI-TN  6/17/2002
          Custom 7/14/05  SNV00102

## Exhibit A

Lot 6, Sanders Ridge Subdivision as shown on plat of record in Plat Book 230, Page 23
in the Register's Office of Shelby County, Tennessee, to which plat reference is hereby
made for a more particular description of said property.

Being the same property conveyed to Donal M McDonagh and wife, Michele R
McDonagh in Warranty Deed filed for record 09/28/05 at Instrument 05163331 as shown
in the Register's Office of Shelby County, Tennessee.

Tom Leatherwood, Shelby County Register of Deeds: inst. # 10049133



# Tom Leatherwood

## Shelby County Register

As evidenced by the instrument number shown below, this document
has been recorded as a permanent record in the archives of the
Office of the Shelby County Register.



| | |
|---|---|
| **10049133** | |
| 05/14/2010 - 08:18 AM | |
| 12 PGS | |
| BUDDY 743719-10049133 | |
| VALUE | 100000.00 |
| MORTGAGE TAX | 112.70 |
| TRANSFER TAX | 0.00 |
| RECORDING FEE | 60.00 |
| DP FEE | 2.00 |
| REGISTER'S FEE | 1.00 |
| WALK THRU FEE | 0.00 |
| TOTAL AMOUNT | 175.70 |

## TOM LEATHERWOOD
REGISTER OF DEEDS SHELBY COUNTY TENNESSEE

1075 Mullins Station, Suite W165 ~ Memphis, Tennessee 38134 ~ (901) 379-7500
Website: http://register.shelby.tn.us ~ Email: Tom.Leatherwood@shelbycountytn.gov

## GUARANTY

_____MEMPHIS_____ , _____TENNESSEE___
            (City)                                              (State)

_____DONAL M MCDONAGH_____

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to in-
duce __TRUST ONE BANK   1715 AARON BRENNER DR   MEMPHIS, TN 38120_____
(herein, with its participants, successors and assigns, called "Lender"), at its option, at any time or from time to
time to make loans or extend other accommodations to or for the account of _____
__TURAS, LLC DBA BELLA VIAGGIA_____
(herein called "Borrower") or to engage in any other transactions with Borrower, the Undersigned hereby absolutely
and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by
reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:

A. If this ☐ is checked, the Undersigned guarantees to Lender the payment and performance of the debt, lia-
bility or obligation of Borrower to Lender evidenced by or arising out of the following: _____
_____ and any extensions,
renewals or replacements thereof (hereinafter referred to as the "Indebtedness").

B. If this ☒ is checked, the Undersigned guarantees to Lender the payment and performance of each and
every debt, liability and obligation of every type and description which Borrower may now or at any time
hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or
incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent,
primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts,
liabilities and obligations being hereinafter collectively referred to as the "Indebtedness").

The Undersigned further acknowledges and agrees with Lender that:

1. No act or thing need occur to establish the liability of the Undersigned hereunder, and no act or thing, except
full payment and discharge of all Indebtedness, shall in any way exonerate the Undersigned or modify, reduce, limit
or release the liability of the Undersigned hereunder.

2. This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue
to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this
guaranty is revoked by written notice actually received by the Lender, and such revocation shall not be effective as
to Indebtedness existing or committed for at the time of actual receipt of such notice by the Lender, or as to any
renewals, extensions and refinancings thereof. If there be more than one Undersigned, such revocation shall be
effective only as to the one so revoking. The death or incompetence of the Undersigned shall not revoke this
guaranty, except upon actual receipt of written notice thereof by Lender and then only as to the decedent or the
incompetent and only prospectively, as to future transactions, as herein set forth.

3. If the Undersigned shall be dissolved, shall die, or shall be or become insolvent (however defined) or revoke
this guaranty, then the Lender shall have the right to declare immediately due and payable, and the Undersigned
will forthwith pay to the Lender, the full amount of all Indebtedness, whether due and payable or unmatured. If the
Undersigned voluntarily commences or there is commenced involuntarily against the Undersigned a case under the
United States Bankruptcy Code, the full amount of all Indebtedness, whether due and payable or unmatured, shall
be immediately due and payable without demand or notice thereof.

4. The liability of the Undersigned hereunder shall be limited to (check only one box) ☐ _____% of
Indebtedness or ☐ a principal amount of $ _____ (if unlimited or if no amount or percentage is
stated, the Undersigned shall be liable for all Indebtedness, without any limitation as to amount or percentage), plus
accrued interest thereon and all attorneys' fees, collection costs and enforcement expenses referable thereto.
Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount,
without affecting or impairing the liability of the Undersigned hereunder. The Lender may apply any sums received
by or available to Lender on account of the Indebtedness from Borrower or any other person (except the
Undersigned), from their properties, out of any collateral security or from any other source to payment of the
excess. Such application of receipts shall not reduce, affect or impair the liability of the Undersigned hereunder. If
the liability of the Undersigned is limited to a stated amount pursuant to this paragraph 4, any payment made by
the Undersigned under this guaranty shall be effective to reduce or discharge such liability only if accompanied by a
written transmittal document, received by the Lender, advising the Lender that such payment is made under this
guaranty for such purpose. If the liability of the Undersigned is limited to a stated percentage of the Indebtedness
pursuant to this paragraph 4, the amount of the Indebtedness for which the Undersigned shall be liable hereunder
shall be the aggregate amount of all said Indebtedness, reduced only by principal payments made by the Borrower
and principal payments made as a result of the sale or liquidation of any collateral securing the Indebtedness (but
not reduced by any payment made to Lender by any other guarantor of the Indebtedness), multiplied by the stated
percentage.

5. The Undersigned will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees
and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty
in any litigation or bankruptcy or insolvency proceedings.

**This guaranty includes the additional provisions on page 2, all of which are made a part hereof.**

IN WITNESS WHEREOF, this guaranty has been duly executed by the Undersigned on this___7TH_____ day
of _MAY_____ , ___2010__ .

_____
DONAL M MCDONAGH

_____

_____

"Undersigned" shall refer to all persons who sign this guaranty, severally and jointly.

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56301  FORM M-240  5/20/91 (For Corporate Guarantor use M-250)   MDF. EQAXM240            (page 1 of 2)

## ADDITIONAL PROVISIONS

6. Whether or not any existing relationship between the Undersigned and Borrower has been changed or ended and whether or not this guaranty has been revoked, Lender may, but shall not be obligated to, enter into transactions resulting in the creation or continuance of Indebtedness, without any consent or approval by the Undersigned and without any notice to the Undersigned. The liability of the Undersigned shall not be affected or impaired by any of the following acts or things (which Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty, without notice to or approval by the Undersigned): (i) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all Indebtedness; (ii) any one or more extensions or renewals of Indebtedness (whether or not for longer than the original period) or any modification of the interest rates, maturities or other contractual terms applicable to any Indebtedness; (iii) any waiver, adjustment, forbearance, compromise or indulgence granted to Borrower, any delay or lack of diligence in the enforcement of Indebtedness, or any failure to institute proceedings, file a claim, give any required notices or otherwise protect any Indebtedness whether or not the Undersigned has made demand on Lender to do or not to do any of the foregoing, the benefit of any statute or rule of law to the contrary being hereby expressly waived by the Undersigned; (iv) any full or partial release of, settlement with, or agreement not to sue, Borrower or any other guarantor or other person liable in respect of any Indebtedness; (v) any discharge of any evidence of Indebtedness or the acceptance of any instrument in renewal thereof or substitution therefor; (vi) any failure to obtain collateral security (including rights of setoff) for Indebtedness, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to protect, insure, or enforce any collateral security; or any release, modification, substitution, discharge, impairment, deterioration, waste, or loss of any collateral security; (vii) any foreclosure or enforcement of any collateral security; (viii) any transfer of any Indebtedness or any evidence thereof; (ix) any order of application of any payments or credits upon Indebtedness; (x) any election by the Lender under §1111(b)(2) of the United States Bankruptcy Code.

7. The Undersigned waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against Lender any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to Borrower or any other person liable in respect of any Indebtedness, or any setoff available against Lender to Borrower or any such other person, whether or not on account of a related transaction. The Undersigned expressly agrees that the Undersigned shall be and remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing Indebtedness, whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. The undersigned shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though the Borrower's obligations had not been discharged.

8. The Undersigned further agrees that the Undersigned shall be and remain obligated to pay Indebtedness even though any other person obligated to pay Indebtedness, including Borrower, has such obligation discharged in bankruptcy or otherwise discharged by law. "Indebtedness" shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which Borrower is discharged from paying or which do not otherwise accrue to Indebtedness due to Borrower's discharge, and the Undersigned shall remain obligated to pay such amounts as though Borrower's obligations had not been discharged.

9. If any payment applied by Lender to Indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of Borrower or any other obligor), the Indebtedness to which such payment was applied shall for the purposes of this guaranty be deemed to have continued in existence, notwithstanding such application, and this guaranty shall be enforceable as to such Indebtedness as fully as if such application had never been made.

10. The Undersigned waives any claim, remedy or other right which the Undersigned may now have or hereafter acquire against Borrower or any other person obligated to pay Indebtedness arising out of the creation or performance of the Undersigned's obligation under this guaranty, including, without limitation, any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any right to participate in any claim or remedy the Undersigned may have against the Borrower, collateral, or other party obligated for Borrower's debts, whether or not such claim, remedy or right arises in equity, or under contract, statute or common law.

11. The Undersigned waives presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing Indebtedness. Lender shall not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this guaranty.

12. The liability of the Undersigned under this guaranty is in addition to and shall be cumulative with all other liabilities of the Undersigned to Lender as guarantor or otherwise, without any limitation as to amount or percentage, unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary.

13. This guaranty shall be enforceable against each person signing this guaranty, even if only one person signs and regardless of any failure of other persons to sign this guaranty. If there be more than one signer, all agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each of every particular and shall be fully binding upon and enforceable against either, any or all the Undersigned. This guaranty shall be effective upon delivery to Lender, without further act, condition or acceptance by Lender, shall be binding upon the Undersigned and the heirs, representatives, successors and assigns of the Undersigned and shall inure to the benefit of Lender and its participants, successors and assigns. Any invalidity or unenforceability of any provision or application of this guaranty shall not affect other lawful provisions and application hereof, and to this end the provisions of this guaranty are declared to be severable. Except as authorized by the terms herein, this guaranty may not be waived, modified, amended, terminated, released or otherwise changed except by a writing signed by the Undersigned and Lender. This guaranty shall be governed by the laws of the State where the lender is located. The Undersigned waives notice of Lender's acceptance hereof.

(page 2 of 2)

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56301 FORM M-240   5/20/91 (For Corporate Guarantor use M-250)   MDF. EGAXM2

## GUARANTY

<u>MEMPHIS</u>                                      , <u>TENNESSEE</u>
(City)                                                            (State)

<u>MICHELE R MCDONAGH</u>

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to in-
duce ___<u>TRUST ONE BANK   1715 AARON BRENNER DR   MEMPHIS, TN 38120</u>_____
(herein, with its participants, successors and assigns, called "Lender"), at its option, at any time or from time to
time to make loans or extend other accommodations to or for the account of _____
___<u>TURAS, LLC DBA BELLA VIAGGIA</u>_____
(herein called "Borrower") or to engage in any other transactions with Borrower, the Undersigned hereby absolutely
and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by
reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:

A. If this ☐ is checked, the Undersigned guarantees to Lender the payment and performance of the debt, lia-
bility or obligation of Borrower to Lender evidenced by or arising out of the following: _____
_____ and any extensions,

renewals or replacements thereof (hereinafter referred to as the "Indebtedness").

B. If this ☒ is checked, the Undersigned guarantees to Lender the payment and performance of each and
every debt, liability and obligation of every type and description which Borrower may now or at any time
hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or
incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent,
primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts,
liabilities and obligations being hereinafter collectively referred to as the "Indebtedness").

The Undersigned further acknowledges and agrees with Lender that:

1. No act or thing need occur to establish the liability of the Undersigned hereunder, and no act or thing, except
full payment and discharge of all indebtedness, shall in any way exonerate the Undersigned or modify, reduce, limit
or release the liability of the Undersigned hereunder.

2. This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue
to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this
guaranty is revoked by written notice actually received by the Lender, and such revocation shall not be effective as
to Indebtedness existing or committed for at the time of actual receipt of such notice by the Lender, or as to any
renewals, extensions and refinancings thereof. If there be more than one Undersigned, such revocation shall be
effective only as to the one so revoking. The death or incompetence of the Undersigned shall not revoke this
guaranty, except upon actual receipt of written notice thereof by Lender and then only as to the decedent or the
incompetent and only prospectively, as to future transactions, as herein set forth.

3. If the Undersigned shall be dissolved, shall die, or shall be or become insolvent (however defined) or revoke
this guaranty, then the Lender shall have the right to declare immediately due and payable, and the Undersigned
will forthwith pay to the Lender, the full amount of all Indebtedness, whether due and payable or unmatured. If the
Undersigned voluntarily commences or there is commenced involuntarily against the Undersigned a case under the
United States Bankruptcy Code, the full amount of all Indebtedness, whether due and payable or unmatured, shall
be immediately due and payable without demand or notice thereof.

4. The liability of the Undersigned hereunder shall be limited to (check only one box) ☐ _____ % of
Indebtedness or ☐ a principal amount of $ _____ (if unlimited or if no amount or percentage is
stated, the Undersigned shall be liable for all Indebtedness, without any limitation as to amount or percentage), plus
accrued interest thereon and all attorneys' fees, collection costs and enforcement expenses referable thereto.
Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount,
without affecting or impairing the liability of the Undersigned hereunder. The Lender may apply any sums received
by or available to Lender on account of the Indebtedness from Borrower or any other person (except the
Undersigned), from their properties, out of any collateral security or from any other source to payment of the
excess. Such application of receipts shall not reduce, affect or impair the liability of the Undersigned hereunder. If
the liability of the Undersigned is limited to a stated amount pursuant to this paragraph 4, any payment made by
the Undersigned under this guaranty shall be effective to reduce or discharge such liability only if accompanied by a
written transmittal document, received by the Lender, advising the Lender that such payment is made under this
guaranty for such purpose. If the liability of the Undersigned is limited to a stated percentage of the Indebtedness
pursuant to this paragraph 4, the amount of the Indebtedness for which the Undersigned shall be liable hereunder
shall be the aggregate amount of all said Indebtedness, reduced only by principal payments made by the Borrower
and principal payments made as a result of the sale or liquidation of any collateral securing the Indebtedness (but
not reduced by any payment made to Lender by any other guarantor of the Indebtedness), multiplied by the stated
percentage.

5. The Undersigned will pay or reimburse Lender for all costs and expenses (including reasonable attorneys' fees
and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty
in any litigation or bankruptcy or insolvency proceedings.

**This guaranty includes the additional provisions on page 2, all of which are made a part hereof.**

IN WITNESS WHEREOF, this guaranty has been duly executed by the Undersigned on this____<u>7TH</u>_____ day
of <u>MAY</u>_____ , __<u>2010</u>__ .

_____
MICHELE R MCDONAGH

_____

_____

"Undersigned" shall refer to all persons who sign this guaranty, severally and jointly.

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56301  FORM M-240  5/20/91 (For Corporate Guarantor use M-250)  MDF, EGAXM240        (page 1 of 2)

ADDITIONAL PROVISIONS

6. Whether or not any existing relationship between the Undersigned and Borrower has been changed or ended and whether or not this guaranty has been revoked, Lender may, but shall not be obligated to, enter into transactions resulting in the creation or continuance of Indebtedness, without any consent or approval by the Undersigned and without any notice to the Undersigned. The liability of the Undersigned shall not be affected or impaired by any of the following acts or things (which Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty, without notice to or approval by the Undersigned): (i) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all Indebtedness; (ii) any one or more extensions or renewals of Indebtedness (whether or not for longer than the original period) or any modification of the interest rates, maturities or other contractual terms applicable to any Indebtedness; (iii) any waiver, adjustment, forbearance, compromise or indulgence granted to Borrower, any delay or lack of diligence in the enforcement of Indebtedness, or any failure to institute proceedings, file a claim, give any required notices or otherwise protect any Indebtedness whether or not the Undersigned has made demand on Lender to do or not to do any of the foregoing, the benefit of any statute or rule of law to the contrary being hereby expressly waived by the Undersigned; (iv) any full or partial release of, settlement with, or agreement not to sue, Borrower or any other guarantor or other person liable in respect of any Indebtedness; (v) any discharge of any evidence of Indebtedness or the acceptance of any instrument in renewal thereof or substitution therefor; (vi) any failure to obtain collateral security (including rights of setoff) for Indebtedness, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to protect, insure, or enforce any collateral security; or any release, modification, substitution, discharge, impairment, deterioration, waste, or loss of any collateral security; (vii) any foreclosure or enforcement of any collateral security; (viii) any transfer of any Indebtedness or any evidence thereof; (ix) any order of application of any payments or credits upon Indebtedness; (x) any election by the Lender under §1111(b)(2) of the United States Bankruptcy Code.

7. The Undersigned waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against Lender any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to Borrower or any other person liable in respect of any Indebtedness, or any setoff available against Lender to Borrower or any such other person, whether or not on account of a related transaction. The Undersigned expressly agrees that the Undersigned shall be and remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing Indebtedness, whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. The undersigned shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though the Borrower's obligations had not been discharged.

8. The Undersigned further agrees that the Undersigned shall be and remain obligated to pay Indebtedness even though any other person obligated to pay Indebtedness, including Borrower, has such obligation discharged in bankruptcy or otherwise discharged by law. "Indebtedness" shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which Borrower is discharged from paying or which do not otherwise accrue to Indebtedness due to Borrower's discharge, and the Undersigned shall remain obligated to pay such amounts as though Borrower's obligations had not been discharged.

9. If any payment applied by Lender to Indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of Borrower or any other obligor), the Indebtedness to which such payment was applied shall for the purposes of this guaranty be deemed to have continued in existence, notwithstanding such application, and this guaranty shall be enforceable as to such Indebtedness as fully as if such application had never been made.

10. The Undersigned waives any claim, remedy or other right which the Undersigned may now have or hereafter acquire against Borrower or any other person obligated to pay Indebtedness arising out of the creation or performance of the Undersigned's obligation under this guaranty, including, without limitation, any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any right to participate in any claim or remedy the Undersigned may have against the Borrower, collateral, or other party obligated for Borrower's debts, whether or not such claim, remedy or right arises in equity, or under contract, statute or common law.

11. The Undersigned waives presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing Indebtedness. Lender shall not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this guaranty.

12. The liability of the Undersigned under this guaranty is in addition to and shall be cumulative with all other liabilities of the Undersigned to Lender as guarantor or otherwise, without any limitation as to amount or percentage, unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary.

13. This guaranty shall be enforceable against each person signing this guaranty, even if only one person signs and regardless of any failure of other persons to sign this guaranty. If there be more than one signer, all agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each of every particular and shall be fully binding upon and enforceable against either, any or all the Undersigned. This guaranty shall be effective upon delivery to Lender, without further act, condition or acceptance by Lender, shall be binding upon the Undersigned and the heirs, representatives, successors and assigns of the Undersigned and shall inure to the benefit of Lender and its participants, successors and assigns. Any invalidity or unenforceability of any provision or application of this guaranty shall not affect other lawful provisions and application hereof, and to this end the provisions of this guaranty are declared to be severable. Except as authorized by the terms herein, this guaranty may not be waived, modified, amended, terminated, released or otherwise changed except by a writing signed by the Undersigned and Lender. This guaranty shall be governed by the laws of the State where the lender is located. The Undersigned waives notice of Lender's acceptance hereof.

(page 2 of 2)

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56301 FORM M-240   5/20/91 (For Corporate Guarantor use M-250)   MDF. EGAXM240