| TRUST ONE BANK | DONAL MCDONAGH | Loan Number: 53 / 10 |
| --- | --- | --- |
| 1715 AARON BRENNER DR | MICHELE MCDONAGH | Date 08/29/2007 |
| MEMPHIS, TN 38120 | 8828 RIVER RISE DR | Maturity Date 08/30/2008 |
| | CORDOVA, TN 38018 | Loan Amount $ 700,000.00 |
| LENDER'S NAME AND ADDRESS | | Renewal Of |
| "You" means the Lender, its successors and assigns. | BORROWER'S NAME AND ADDRESS | |
| | "I" Includes each Borrower above, jointly and severally. | Soc Sec# |

TERMS FOLLOWING A ☐ APPLY ONLY IF CHECKED

NOTE - For value received, I promise to pay to you, or your order, at your address above, the principal sum of: _____ Dollars $ 700,000.00

**SEVEN HUNDRED THOUSAND DOLLARS AND ZERO CENTS**

plus interest from 08/29/2007 at the rate of 8.500000 % per year until the index rate changes.

☒ ADDITIONAL FINANCE CHARGE - I also agree to pay a nonrefundable processing fee of $ 300.00, and it will be ☒ paid in cash on the date of this note. ☐ paid pro rata as part of each scheduled payment over the loan term. ☐ withheld from the loan proceeds. (If this fee is withheld from the loan proceeds, the amount is included in the principal sum of this note.)

☒ VARIABLE RATE - The rate above may then change so as always to be 0.250 % ABOVE the following index rate: LENDER'S PRIME, WHICH IS THE BASE RATE USED BY LENDER TO SET INTEREST RATES AT WHICH LOANS ARE MADE TO VARIOUS CUSTOMERS. LOAN(S) MAY BE MADE AT, ABOVE OR BELOW SAID PRIME RATE.

_____. The interest rate may not change more than _____ % each _____ N/A _____.

The annual interest rate in effect on this note will not at any time be more than _____ % or less than _____ %. The interest rate in effect on this note may change (as often as) DAILY (assuming there is a change in the base rate) and an increase in the interest rate will cause an increase in ☒ the amount of each scheduled payment. ☐ the amount due at maturity. ☐ the number of payments.

PAYMENT - I will pay this note as follows:
(a) ☒ Interest due: 12 MONTHLY Int Pmt(s) on Amount Advanced Beginning September 30, 2007
Principal due: August 30, 2008
(b) ☐ This note has _____ payments. The first payment will be in the amount of $ _____ and will be due _____. A payment of $ _____ will be due on the _____ day of each _____ thereafter. The final payment of the entire unpaid balance of principal and interest will be due _____.

INTEREST - Interest accrues on a ACTUAL # DAYS/365 -DAY YEAR basis. POST-MATURITY INTEREST - Interest will accrue after maturity on the unpaid balance of this note on the same basis as interest accrues before maturity, unless a specific post-maturity interest rate is agreed to in the next sentence.

STATUTORY CEILING -In addition to any contractual limits contained in this note, the interest rate in effect during the term of this note shall not at any time be greater than:
☒ ********** %.
☒ the maximum rate of interest from time to time allowed to be charged by applicable law.

☐ Interest will accrue at the rate of _____ % per year on the balance of this note not paid at maturity, including maturity by acceleration.
☐ MINIMUM INTEREST CHARGE - I agree to pay a minimum interest charge of $ N/A if I pay this loan off before you have earned that much in interest.

☒ LATE CHARGE - I agree to pay a late charge on the portion of any payment made more than 10 days after it is due equal to 5% of the unpaid amount with a maximum of $100.00.

THE PURPOSE OF THIS LOAN IS PRIMARILY FOR - CONSTRUCT 1-4 FAMILY RESIDENCE.

SECURITY - You have certain rights that may affect my Property as explained on page 3.
(a) ☒ This loan is secured by DEED OF TRUST, dated 08/29/2007.
(b) ☒ Security Agreement - I grant you a security interest in the Property described below. The rights I am granting you in this Property and the obligations this agreement secures are defined on page 3 of this agreement.
1-4 FAMILY RESIDENCE LOT 6 SANDERS RIDGE PUD GERMANTOWN, SHELBY COUNTY TN AND BEING MORE PARTICULARLY DESCRIBED ON DEED OF TRUST DATED 08/29/07.

This Property will be used for CONSUMER purposes.

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | AMOUNT FINANCED The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS The amount I will have paid when I have made all scheduled payments. | I have the right to receive at this time an itemization of the Amount Financed. YES - I want X an itemization. |
| --- | --- | --- | --- | --- |
| 8.6144 e % | $ 30214.01 e | $ 699699.00 | $ 729913.01 e | NO - I do not want an itemization. |

My Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due | "e" means an estimate. |
| --- | --- | --- | --- |
| 12 | $ MONTHLY Int Pmt(s) | on Amount Advanced Beginning September 30, 2007 | $ 58.00 Filing Fees |
| 1 | $ 700,000.00 | Principal pmt due on August 30, 2008 | $ N/A Nonfiling Insurance |
| | $ | | |
| | $ | | |

☐ This note has a demand feature.   ☐ This note is payable on demand and all disclosures are based on an assumed maturity of one year.

☒ Variable Rate (Check one) { ☐ My loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to me earlier.
☒ The annual percentage rate may increase during the term of this transaction if There is an increase in the Lender's Prime Rate

_____. The rate may not increase more than once daily _____ and may not increase more than _____ % each N/A. Any increase will take the form of higher payments _____. If the rate increases by _____ % in _____.

See Hypothetical examples on page 3 the _____ will increase to _____. The rate will not go above _____ %.

Security - I am granting a security interest in:   ☐ (brief description of other property)
☒ the goods or property being purchased.
☒ collateral securing other loans with you may also secure this loan.
☒ my deposit accounts and other rights to the payment of money from you.
☒ Late Charge - I will be charged a late charge on the portion of any payment made more than 10 days aftr s due equal to 5% of the unpaid amount with a maximum of $100.00.
☐ Required Deposit - The annual percentage rate does not take into account my required deposit.
Prepayment - If I pay off this note early, I ☐ may ☒ will not have to pay a penalty.
☒ If I pay off this note early, I will not be entitled to a refund of part of the finance charge.
☒ Assumption - Someone buying the property securing this obligation cannot assume the remainder of the obligation on the original terms.
I can see my contract documents for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

VARIABLE/SIMPLE INTEREST NOTE, DISCLOSURE, AND SECURITY AGREEMENT
Experts © 1981, 1988 Bankers Systems, Inc., St. Cloud, MN Form NDaSVSILAZTN 8/29/2001
Custom 11/8/02   MDF. ETNNDASV



CONSUMER LOAN - NOT FOR OPEN-END CREDIT
(page 1 of 3)

**CREDIT INSURANCE** - Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless I sign and agree to pay the additional costs.

| Type | Premium | Term |
|---|---|---|
| Credit Life | N/A   N/A | N/A |
| Credit Disability | N/A | N/A |
| Joint Credit Life | N/A   N/A | N/A |

I ☐ do ☒ do not want credit life insurance.
I ☐ do ☒ do not want credit disability insurance.
I ☐ do ☒ do not want joint credit life insurance.
I ☐ do ☐ do not want _____ insurance.
X _____ DOB N/A
X _____ DOB N/A

**PROPERTY INSURANCE** - I may obtain property insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $ N/A for N/A of coverage.

**ITEMIZATION OF AMOUNT FINANCED**
AMOUNT GIVEN TO ME DIRECTLY  $ See attached
AMOUNT PAID ON MY (LOAN) ACCOUNT  $ itemization
$ _____

AMOUNTS PAID TO OTHERS ON MY BEHALF:
to Insurance Companies  $ _____
to Public Officials  $ _____
$ _____
$ _____
$ _____
(less) PREPAID FINANCE CHARGE(S)  $ _____

Amount Financed  $ _____

(Add all items financed and subtract prepaid finance charges.)

**SINGLE INTEREST INSURANCE** - I may obtain single interest insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $ N/A for N/A of coverage.

## ADDITIONAL TERMS OF THE NOTE

**DEFINITIONS** - "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns. All references to "this note" or "this agreement" or "this loan" shall mean this Variable/Simple Interest Note, Disclosure, and Security Agreement.

**APPLICABLE LAW** - This note and any agreement securing this note will be governed by the laws of the United States and, to the extent not inconsistent therewith, of the State of Tennessee. The federal Truth-in-Lending disclosures on page 1 are disclosures only and are not intended to be terms of this agreement. The fact that any part of this note cannot be enforced will not affect the rest of this note. Any change to this note or any agreement securing this note must be in writing and signed by you and me. Time is of the essence in this agreement.

**NAME AND LOCATION** - The address given for me as Borrower on page 1 is the address of my principal residence. All the Property which is the collateral for this loan is located at my address given on page 1, or at another address provided by me. I will provide you with at least 30 days' notice prior to changing my name or principal residence.

**PAYMENTS** - Each payment I make on this loan will be applied first to any charges I owe other than principal and interest, then to interest that is due, and finally to principal that is due. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. The actual amount of my final payment will depend on the interest rates (if variable) and my payment record. If any payment due under this loan does not equal or exceed the amount of interest due, you may, at your option, increase the amount of the payment due and all future payments to an amount that will pay off this loan in equal payments over the remaining term of this loan.

**PREPAYMENT** - I may prepay this loan in whole or in part at any time. If I prepay in part, I must still make each later payment in the original amount as it becomes due until this note is paid in full.

**INTEREST** - Interest accrues on the principal remaining unpaid from time to time, until paid in full. If "Variable Rate" is checked on page 1, I will pay interest at the rates in effect from time to time. Decreases in the interest rate for this note will have the opposite effect on payments that increases would have. The interest rate(s) and other charges on this loan will never exceed the highest rate or charge allowed by law for this loan. You will figure a change in the interest rate by using the index rate in effect at the time the interest rate is to change. Changes in the index between scheduled changes in the interest rate will not affect the interest rate. If the index specified on page 1 ceases to exist, I agree that you may substitute a similar index for the original.

**INDEX** - If you and I have agreed that the interest rate on this note will be variable and will be related to an index, then the index you select will function only as a tool for setting the rate on this note. You do not guaranty, by selecting any index, that the interest rate on this note will have a particular relationship to the interest rate you charge on any other loans or any type or class of loans with your other customers, or that it is the lowest rate charged by you on any loan.

**ACCRUAL METHOD** - The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1. For interest calculation, the accrual method will determine the number of days in a year. If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST-MATURITY INTEREST** - Interest will accrue on the principal balance remaining unpaid after final maturity at the rate specified on page 1. For purposes of this section, final maturity occurs:
(a) If this loan is payable on demand, on the date you make demand for payment;
(b) If this loan is payable on demand with alternate payment date(s), on the date you make demand for payment or on the final alternate payment date, whichever is earlier;
(c) On the date of the last scheduled payment of principal; or
(d) On the date you accelerate the due date of this loan (demand immediate payment).

**REAL ESTATE OR RESIDENCE SECURITY** - If this loan is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by this agreement.

PURSUANT TO THE PROVISIONS OF T.C.A. SECTION 47-18-2404, AND TO THE EXTENT THAT THE LOAN OR INDEBTEDNESS IS SECURED BY THE OWNER-OCCUPIED RESIDENCE OF BORROWER, PLEASE BE ADVISED AS FOLLOWS:
FAILURE TO MAKE TIMELY PAYMENTS OR TO REPAY THE LOAN WILL RESULT IN THE BORROWER'S HOME BEING SUBJECT TO FORECLOSURE.
ADDITIONAL INFORMATION ON DEBT CONSOLIDATION LOANS IS AVAILABLE FROM THE TENNESSEE DEPARTMENT OF COMMERCE & INSURANCE, DIVISION OF CONSUMER AFFAIRS AT 1-800-342-8385.
IN ADDITION, IT IS THE OBLIGATION OF THE BORROWER TO MAKE PAYMENTS TO PRIOR LENDERS.
BY SIGNING ON PAGE 3, BORROWER REPRESENTS AND WARRANTS THAT HE/SHE HAS READ THE FOREGOING COMPLETELY AND UNDERSTANDS THE INFORMATION CONTAINED HEREIN.

**THIRD PARTIES** - If the Property is in the possession of a third party, I will join you in notifying the third party of your interest and obtaining an acknowledgment from the third party that it is holding the Property for the benefit of you, and you shall obtain control (as such term is used in the UCC) of the Property, in form and content satisfactory to you. Without limiting the generality of the foregoing, if the Property is comprised of deposit accounts or investment property, and is held by another financial institution, securities intermediary, or commodities intermediary (all being referred to hereafter as a "custodian"), I shall immediately notify you and, at your request, I will either cause such custodian to (i) agree to comply with the instructions or entitlement orders from you as to such Property, or, to apply any value distributed on account of any commodity contract as directed by you, in any case without further consent from me, or (ii) arrange for you to become the entitlement holder or deposit account holder, with me being permitted to withdraw or otherwise deal with such account(s) only with your written consent. If such Property is comprised of goods in the possession of a bailee, the acknowledgement that I obtain from the bailee will also confirm that the bailee holds the Property for the benefit of you and shall act upon your instructions without further consent from me.

**INVESTMENT PROPERTY** - Upon delivery to you, the investment property which comprises a portion of the Property shall be accompanied by executed bond/stock powers in blank and shall be accompanied by such other instruments or documents as you may reasonably request. You shall have the right (in your sole and absolute discretion) to hold any certificates representing the Property in your own name or in my name, endorsed or assigned in blank or in favor of you.

**DEFAULT** - Subject to any limitations in the "REAL ESTATE OR RESIDENCE SECURITY" paragraph above, I will be in default on this loan and any agreement securing this loan if any one or more of the following occurs:
(a) I fail to make a payment in full when due;
(b) I die, am declared incompetent, or become insolvent;
(c) I fail to keep any promise I have made in connection with this loan;
(d) I fail to pay, or keep any other promise on, any other loan or agreement I have with you;
(e) I make any written statement or provide any financial information that is untrue or inaccurate at the time it is provided;
(f) Any creditor of mine attempts to collect any debt I owe through court proceedings, set-off or self-help repossession;
(g) The Property is damaged, destroyed or stolen or is confiscated by or forfeited to any law enforcement agency or governmental authority;
(h) I fail to provide any additional security that you may require;
(i) Any legal entity (such as a partnership or corporation) that has agreed to pay this note merges, dissolves, reorganizes, ends its business or existence, or a partner or majority stockholder dies or is declared incompetent; or
(j) Anything else happens that causes you to believe that you will have difficulty collecting the amount I owe you.
If any of us are in default on this note or any security agreement, you may exercise your remedies against any or all of us.

**RECORD RETENTION** - I acknowledge and agree that you may from time to time retain information about me and documents I sign, including, but not limited to, this note and documents related to this note (collectively, the "documents") electronically (such as in optical, digital or other electronic storage and retrieval system) and destroy the original documents. You and I agree and intend that any copy of any document produced by us from the electronic media shall have the same legal force and effect as the original documents for all purposes and in all circumstances, including, but not limited to, collection, admissibility, authentication, or any other legal purpose.

**REMEDIES** - Subject to any limitations in the "REAL ESTATE OR RESIDENCE SECURITY" paragraphs above, if I am in default on this loan or any agreement securing this loan, and at any time thereafter, whether or not demand has been made and without presentment, demand, protest, notice of protest, dishonor, or other notice or demand of any kind, all of which I and the cosigner hereby expressly waive, you may:
(a) Make unpaid principal, earned interest and all other agreed charges I owe you under this loan immediately due and payable in full;
(b) Use the right of set-off as explained below;
(c) Demand more security or new parties obligated to pay this loan (or both) in return for not using any other remedy;
(d) Make a claim for any and all insurance benefits or refunds that may be available on my default;
(e) Use any remedy you have under state or federal law;
(f) Use any remedy given to you in any agreement securing this loan;
(g) Take possession of any Property if not already in your possession without demand and without legal process. You may require me to assemble the Property and make it available to you at a place or places, designated by you, reasonably convenient to both parties. I grant to you the right, for this purpose, to enter into or on any premises where the Property may be located;
(h) With or without taking possession, sell, lease, or otherwise dispose of the Property at public or private sale in accordance with the UCC. Unless the Property is perishable, threatens to decline speedily in value, or is a type customarily sold on a recognized market, you will give me reasonable notice of the time and place of any public sale thereof or of the time after which any private sale or any other intended disposition thereof is to be made as set forth in the UCC. Notice shall be deemed reasonable if given ten (10) days prior to disposition. I agree to pay all expenses of retaking, holding, preparing for sale, and selling the Property, together with any court costs and your attorneys' fees; all such expenses, costs, and fees shall be deemed an obligation. You have no obligation to clean up or otherwise prepare the Property for sale; and
(i) File suit and obtain judgment and, in conjunction with any action, you may seek any ancillary remedies provided by law, including, without limitation, levy of attachment and garnishment.
By choosing any one or more of these remedies you do not give up your right to use another remedy later. By deciding not to use any remedy should I be in default, you do not give up your right to consider the event a default if it happens again.

You may sell the Property without giving any warranties. You may specifically disclaim any warranties of title or the like. This procedure will not be considered to adversely affect the commercial reasonableness of any sale of the Property. If you sell any of the Property upon credit, I will be credited only with payments actually made by the purchaser, received by you and applied to the indebtedness of the purchaser. In the event the purchaser fails to pay for the Property, you may resell the Property and I will be credited with the proceeds of the sale.

Expere © 1981, 1988 Bankers Systems, Inc., St. Cloud, MN Form NDaSVSILAZTN 6/29/2001
Custom 11/6/02   MFD, ETNNDASV

(page 2 of 3)

### ADDITIONAL TERMS OF THE NOTE (CONT.)

**COSTS OF COLLECTION AND ATTORNEYS' FEES** - I agree to pay you all reasonable costs you incur to collect this debt or realize on any security. This includes, unless prohibited by law, reasonable attorneys' fees. This provision also shall apply if I file a petition or any other claim for relief under any bankruptcy rule or law of the United States, or if such petition or other claim for relief is filed against me by another.

**SET-OFF** - I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.
"Right to receive money from you" means:
(a) Any deposit account balance I have with you;
(b) Any money owed to me on an item presented to you or in your possession for collection or exchange; and
(c) Any repurchase agreement or other nondeposit obligation.
"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.
If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.
You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**OTHER SECURITY** - Any present or future agreement securing any other debt I owe you also will secure the payment of this loan. Property securing another debt will not secure this loan if such property is my principal dwelling and you fail to provide any required notice of right of rescission. Also, property securing another debt will not secure this loan to the extent such property is in household goods.

**OBLIGATIONS INDEPENDENT** - I understand that my obligation to pay this loan is independent of the obligation of any other person who has also agreed to pay it. You may, without notice, release me or any of us, give up any right you may have against any of us, extend new credit to any of us, or renew or change this note one or more times and for any term, and I will still be obligated to pay this loan. You may, without notice, fail to perfect your security interest in, impair, or release any security and I will still be obligated to pay this loan.

**WAIVER** - I waive (to the extent permitted by law) demand, presentment, protest, notice of dishonor and notice of protest.

**PRIVACY** - I agree that from time to time you may receive credit information about me from others, including other lenders and credit reporting agencies. I agree that you may furnish on a regular basis credit and experience information regarding my loan to others seeking such information. To the extent permitted by law, I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

**FINANCIAL STATEMENTS** - I will give you any financial statements or information that you feel is necessary. All financial statements and information I give you will be correct and complete.

**PURCHASE MONEY OBLIGATION** - If this is a purchase money obligation, you may include the name of the seller on the check or draft for this loan.

### ADDITIONAL TERMS OF THE SECURITY AGREEMENT

**SECURED OBLIGATIONS** - This security agreement secures this loan (including all extensions, renewals, refinancings and modifications) and any other debt I have with you now or later. Property described in this security agreement will not secure other such debts if you fail to give any required notice of the right of rescission with respect to the Property. Also, this security agreement will not secure other debts if this security interest is in consumer goods and the other debt is a consumer transaction. This security agreement will last until it is discharged in writing.
For the sole purpose of determining the extent of a purchase money security interest arising under this security agreement:
(a) Payments on any nonpurchase money loan also secured by this agreement will not be deemed to apply to the purchase money obligations; and
(b) Payments on the purchase money obligations will be deemed to apply first to the nonpurchase money portion of the loan, if any, and then to the purchase money obligations in the order in which the items were acquired.
No security interest will be terminated by application of this formula. "Purchase money obligation" means an obligation I incur as all or part of the price of the Property securing the loan or for value given to enable me to acquire rights in or the use of the Property if the value is in fact so used.

**PROPERTY** - The word "Property," as used here, includes all property that is listed in the security agreement on page 1. If a general description is used, the word Property includes all my property fitting the general description. Property also means all benefits that arise from the described Property (including all proceeds, insurance benefits, payments from others, interest, dividends, stock splits and voting rights). It also means property that now or later is attached to, is a part of, or results from the Property, and all supporting obligations. "Proceeds" includes anything acquired on the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising out of the Property; and any collections and distributions on account of the Property.

**OWNERSHIP AND DUTIES TOWARD PROPERTY** - Unless a co-owner(s) of the Property signed a third party agreement, I represent that I own all the Property. I will defend the Property against any other claim. I agree to do whatever you require to perfect your interest and keep your priority. I will not do anything to harm your position.
I will keep the Property in my possession (except if pledged and delivered to you). I will keep it in good repair and use it only for its intended purposes. I will keep it at my address unless we agree otherwise in writing. I will not use the Property for a purpose that will violate any laws or subject the Property to forfeiture or seizure.
I will not try to sell or transfer the Property, or permit the Property to become attached to any real estate, without your written consent. I will pay all taxes and charges on the Property as they become due. I will inform you of any loss or damage to the Property. You have the right of reasonable access in order to inspect the Property.

**WAIVER** - To the extent permitted by law, I waive all personal property exemptions in the Property securing this loan.

**INSURANCE** - I agree to buy insurance on the Property against the risks and for the amounts you require. I will name you as loss payee and provide you evidence of any such policy. You may require added security on this loan if you agree that insurance proceeds may be used to repair or replace the Property. I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference. I will buy the insurance from a firm authorized to do business in Tennessee. The firm will be reasonably acceptable to you. I will keep the insurance until all debts secured by this agreement are paid. If I fail to maintain insurance or provide you with proof of insurance, you may obtain insurance to protect your interest in the Property. I will pay for the costs of any creditor-placed insurance.

**DEFAULT AND REMEDIES** - If I am in default, in addition to the remedies listed in the note portion of this document and subject to any of the limitations in the "REAL ESTATE OR RESIDENCE SECURITY" paragraph, you may (after giving notice and waiting a period of time, if required by law):
(a) Pay taxes or other charges, or purchase any required insurance, if I fail to do these things (but you are not required to do so). You may add the amount you pay to this loan and accrue interest on that amount at the interest rate(s) in effect from time to time, on this note until paid in full;
(b) Require me to gather the Property and any related records and make it available to you in a reasonable fashion;
(c) Take immediate possession of the Property, but in doing so you may not breach the peace or unlawfully enter onto my premises. You may sell, lease or dispose of the Property as provided by law. (If the Property includes a manufactured home, you will begin the repossession by giving me notice and an opportunity to cure my default, if required by law.) You may apply what you receive from the sale of the Property to your expenses and then to the debt. If what you receive from the sale of the Property is less than what I owe you, you may take me to court to recover the difference (to the extent permitted by law); and
(d) Keep the Property to satisfy the debt.
I agree that when you must give notice to me of your intended sale or disposition of the Property, the notice is reasonable if it is sent to me at my last known address by first class mail 15 days before the intended sale or disposition. I agree to inform you in writing of any change in my address.

**FILING** - I hereby irrevocably authorize you at any time and from time to time to file one or more financing statements in the UCC, in form satisfactory to you, describing the Property. Such description of the Property may identify the Property as (i) all assets of Debtor or words of similar effect, regardless of whether any particular asset comprised in the Property falls within the scope of Article 9 of the UCC, or (ii) as being of an equal or lesser scope or with greater detail. Debtor also ratifies its authorization for Secured Party to have filed in any UCC jurisdiction any like initial financing statements or amendments thereto if filed prior to the date hereof. Debtor further authorizes Secured Party to file one or more financing statements describing any agricultural liens or other statutory liens held by Secured Party.

**ASSUMPTIONS** - This security agreement and any loan it secures cannot be assumed by someone buying the Property from me. This will be true unless you agree in writing to the contrary. Without such an agreement, if I try to transfer any interest in the Property, I will be in default on all obligations that are secured by this security agreement.

(Optional)

Signed _____ For Lender
Officer's Name _____

☐ **CREDITOR-PLACED INSURANCE NOTICE** - I am giving you a security interest in Property, as described in the SECURITY section on page one (1). I am required to maintain insurance on the Property to protect your interest. If I fail to provide you with evidence of such insurance, you may place insurance to protect your interest. I will pay for the costs of any creditor-placed insurance.

---

**NOTICE TO COSIGNER**

You (the cosigner) are being asked to guaranty this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You also may have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

---

Attach FTC "Preservation of Consumer Claims and Defenses" Notice if Applicable

---

**SIGNATURES** - I AGREE TO THE TERMS SET OUT ON PAGES 1, 2 AND 3 OF THIS AGREEMENT. I HAVE RECEIVED A COPY OF THIS DOCUMENT ON TODAY'S DATE.

COSIGNERS - SEE NOTICE ON PAGE 3 BEFORE SIGNING.

Signature _____  Signature _____  29TH  AUGUST  2007

Signature _____  Signature _____

**Hypothetical Examples**
**Installment Loan:**
Assume your loan of $10,000 was made at 11%, payable in 36 consecutive monthly payments of $327.39, the rate can be changed yearly and any additional funds due were to be collected at maturity. If the note increases 1% in 1 year, the amount due at maturity will increase to $405.99.

**Single Payment:**
Assume your loan of $10,000 was made at 11%, payable in one payment in 180 days. If the rate increases 1% in 3 months, the amount due at maturity will increase $24.93.

RETURN TO:
THE HEWGLEY LAW FIRM
6305 Humphreys Boulevard, Suite 108
Memphis, TN 38120
STEWART #270801262
MEH #200708071

This document was prepared by (name and address) ............
TRUST ONE BANK
.....1715. AARON. BRENNER. DR... MEMPHIS,.TN.38120..................
The MAXIMUM PRINCIPAL INDEBTEDNESS for
Tennessee Recording Tax Purposes is .70,000.00..............

———————State of Tennessee——————————————————Space Above This Line For Recording Data———————
**DEED OF TRUST** (With Future Advance Clause)

☐ This is an "Open End Mortgage," as defined in Chapter 137, 1987 Public Acts of Tennessee, and Grantor(s) hereby acknowledge(s) notice that said Public Chapter 137 gives Grantor(s) the right, by complying with its provisions, to reduce the limit on the maximum amount of indebtedness secured by this Deed of Trust. The required notice of limitation shall be served on Lender in the format and at the address stated in the open-end credit agreement.

☒ This instrument secures, among other things, an obligation or obligations incurred for the construction of an improvement on the hereinafter described Land and including the acquisition cost of the Land, and to that extent this instrument constitutes a "construction mortgage," as that term is used in Tenn. Code Ann. § 47-9-334.

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is .....08/29/2007.....................
and the parties, their addresses and tax identification numbers, if required, are as follows:
GRANTOR:
DONAL MCDONAGH
MICHELE MCDONAGH
8828 RIVER RISE DR
CORDOVA    TN    38018-

TRUSTEE:
ERIN WARD
1715 AARON BRENNER DR
MEMPHIS, TN 38120

LENDER: (and its successors and assigns, such term always referring to the lawful owner and holder of the Secured Debt (as hereinafter defined)):
TRUST ONE BANK
1715 AARON BRENNER DR
MEMPHIS, TN 38120

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, bargains, transfers, sets over, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:
SEE ATTACHED EXHIBIT "A" FOR COMPLETE LEGAL DESCRIPTION.

The property is located in ....SHELBY................................................ at .........................................
                                    (County)
LOT..6..SANDERS..RIDGE..PUD................, ............GERMANTOWN............, Tennessee ........................
         (Address)                                         (City)                                    (ZIP Code)

Together with all rights, easements, estates, tenements, hereditaments, interests, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

TENNESSEE - DEED OF TRUST (NOT FOR FNMA, FHLMC, FHA OR VA USE)
Expere © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-DT-TN 8/13/2002 Custom 7/14/06 SNV00103
 (page X of X)

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ .........700000.00.......................................... . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.
4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
    A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions.(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.) PROMISSORY NOTE OF EVEN DATE AND EVEN AMOUNT.

    B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Grantor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.
    C. All obligations Grantor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.
    D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

    This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.
5. **PAYMENTS.** Grantor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.
6. **WARRANTY OF TITLE.** Grantor warrants that Grantor is lawfully seized and possessed of the estate conveyed by this Security Instrument and has the right to irrevocably grant, bargain, transfer, set over, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.
7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:
    A. To make all payments when due and to perform or comply with all covenants.
    B. To promptly deliver to Lender any notices that Grantor receives from the holder.
    C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.
8. **CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.
9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.
10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property. Grantor will comply with all present and future applicable law affecting the Property.
Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.
11. **AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably grants, bargains, transfers, sets over, conveys and sells to Trustee, in trust for the benefit of Lender, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Grantor will promptly provide Lender with true and correct copies of all existing and future Leases. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default under the terms of this Security Instrument.
Grantor agrees that this assignment is immediately effective between the parties to this Security Instrument and effective as to third parties on the recording of this Deed of Trust. This assignment will remain in effect during any redemption period until the Secured Debt is satisfied. Grantor agrees that Lender or Trustee may take actual possession of the Property without the necessity of commencing legal action and that actual possession is deemed to occur when Lender, or its agent, notifies Grantor of default and demands that any tenant pay all future Rents directly to Lender. On receiving notice of default, Grantor will endorse and deliver to Lender any payment of Rents in Grantor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Grantor warrants that no default exists under the Leases or any applicable landlord/tenant law. Grantor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. **DEFAULT.** Grantor will be in default if any party obligated on the Secured Debt fails to make payment when due. Grantor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default. Grantor waives notice or demand prior to acceleration.
At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property. If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public outcry of the Property to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates after advertising the sale at least three (3) different times in some newspaper published in the county in which the sale is to be made, the first of which publications shall be at least twenty (20) days previous to said sale; provided, however, that Trustee shall give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale. Any sale hereunder may be postponed by Trustee and reset at a later date without additional publication; provided that an announcement to that effect be made at the scheduled place of sale at the time and on the date the sale was set, either originally or by prior announcement of postponement.
Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor or any party or entity lawfully entitled thereto. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein. In the event of any sale hereunder, Grantor and all persons holding thereunder shall be and become tenants at will of the purchaser, said tenancy to be terminable at the option of the purchaser immediately upon notice from the purchaser.
All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released.

17. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance" or "regulated substance" under any Environmental Law.
Grantor represents, warrants and agrees that:
   A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

*Exper̃* © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-DT-TN 6/13/2002 Custom 7/14/06   SNV00103   (page 3 of 9)

B. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

C. Grantor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Grantor shall take all necessary remedial action in accordance with any Environmental Law.

D. Grantor shall immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. **CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. **INSURANCE.** Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance and such insurer shall be required to provide at least thirty (30) days notice to Lender prior to cancellation or material change. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing, unless otherwise required by applicable law. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

25. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Unless prohibited by applicable law, notice to one Grantor will be deemed to be notice to all Grantors.

26. **WAIVERS.** Except to the extent prohibited by law, Grantor waives all rights to homestead, curtesy and dower, appraisement, and the marshalling of liens and assets relating to the Property. In addition, statutory rights of redemption by Grantor after foreclosure sale are expressly waived to the extent not prohibited by law.

27. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Open End Mortgage.** This Deed of Trust is an "Open End Mortgage" as defined under Tenn. Code Ann. § 47-28-101 and secures the Secured Debt which includes a revolving line of credit provision. The Secured Debt is due and payable on .............................. if not paid earlier. The due date may not be more than thirty years after the date of the Secured Debt. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

*Exßerß* © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-DT-TN 6/13/2002 Custom 7/14/05 SNV00103

☐ **Fixture Filing.** Grantor grants to Lender a security interest in all goods that Grantor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
☐ Condominium Rider  ☐ Planned Unit Development Rider  ☐ Other ........................................

☐ **REAL ESTATE OR RESIDENCE SECURITY.** PURSUANT TO THE PROVISIONS OF T.C.A. SECTION 47-18-2404, AND TO THE EXTENT THAT THE LOAN OR INDEBTEDNESS IS SECURED BY THE OWNER-OCCUPIED RESIDENCE OF GRANTOR, PLEASE BE ADVISED AS FOLLOWS:
   (A) FAILURE TO MAKE TIMELY PAYMENTS OR TO REPAY THE LOAN WILL RESULT IN THE GRANTOR'S HOME BEING SUBJECT TO FORECLOSURE.
   (B) ADDITIONAL INFORMATION ON DEBT CONSOLIDATION LOANS IS AVAILABLE FROM THE TENNESSEE DEPARTMENT OF COMMERCE & INSURANCE, DIVISION OF CONSUMER AFFAIRS AT 1-800-342-8385.
   IN ADDITION, IT IS THE OBLIGATION OF THE GRANTOR TO MAKE PAYMENTS TO PRIOR LENDERS.
   BY SIGNING BELOW, GRANTOR REPRESENTS AND WARRANTS THAT HE/SHE HAS READ THE FOREGOING COMPLETELY AND UNDERSTANDS THE INFORMATION CONTAINED HEREIN.

☐ **Additional Terms.**

**SIGNATURES:** By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

........................................... 8/29/07  ........................................... 8/29/07
(Signature) DONAL McDONAGH         (Date)   (Signature) MICHELE McDONAGH         (Date)

........................................... ........................................... 
(Signature)                       (Date)   (Signature)                       (Date)

**INDIVIDUAL ACKNOWLEDGMENT:**
STATE OF TENNESSEE
COUNTY OF __SHELBY__

Personally appeared before me, the undersigned, a Notary Public of the State and County aforesaid, __DONAL__ __McDONAGH__, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged that __ he executed the within instrument for the purposes therein contained.

WITNESS my hand, at office, this __29th__ day of __August__, 2007
My Commission Expires: __7/27/11__
                                       (Notary Public)

**INDIVIDUAL ACKNOWLEDGMENT:**
STATE OF TENNESSEE
COUNTY OF __SHELBY__

Personally appeared before me, the undersigned, a Notary Public of the State and County aforesaid, __MICHELE__ __McDONAGH__, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged that __s__he executed the within instrument for the purposes therein contained.

WITNESS my hand, at office, this __29th__ day of __August__, 2007
My Commission Expires: __7/27/11__
                                       (Notary Public)

Please return this document after recording to: ..........................................................................
Mail Tax Bills to: ......................................................................................................................

*(page 5 of 6)*

Exper*e*f ©1994 Bankers Systems, Inc., St. Cloud, MN Form RE-DT-TN 5/13/2002 Custom 7/14/06  SNV00103

**INDIVIDUAL ACKNOWLEDGMENT:**
STATE OF TENNESSEE
COUNTY OF _____

    Personally appeared before me, the undersigned, a Notary Public of the State and County aforesaid, _____
_____, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged that ___ he executed the within instrument for the purposes therein contained.

    WITNESS my hand, at office, this _____ day of _____, _____ .

My Commission Expires: _____   _____
                                                               (Notary Public)

**INDIVIDUAL ACKNOWLEDGMENT:**
STATE OF TENNESSEE
COUNTY OF _____
                                         TRUST ONE BANK
    Personally appeared before me, the undersigned, a Notary Public of the State and County aforesaid, _____
_____, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged that ___ he executed the within instrument for the purposes therein contained.

    WITNESS my hand, at office, this _____ day of _____, _____ .

My Commission Expires: _____   _____
                                                               (Notary Public)

**POWER OF ATTORNEY ACKNOWLEDGMENT:**
STATE OF TENNESSEE
COUNTY OF _____

    On this the _____ day of _____, _____, before me personally appeared _____
_____, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), to be the person who executed the foregoing instrument on behalf of _____,
acknowledged that such person executed the same as the free act and deed of _____,
evidenced by that certain Power of Attorney of record in Book _____ , page _____ , in the Register's Office
for _____ County, Tennessee.

    WITNESS my hand, at office, this _____ day of _____, _____ .

My Commission Expires: _____   _____
                                                               (Notary Public)

THE HEWGLEY LAW FIRM
Please return this document after recording to: 6305 Humphreys Boulevard, Suite 108, Memphis, TN  38120
Mail Tax Bills to: Donal A. Michele McDonagh, 882B River Rise Drive, Cordova, TN 38018

Exhibit "A"

Borrower(s): Donal M. McDonagh
Michele R. McDonagh

Address: Lot 6 Sanders Ridge PUD
Germantown, TN 38138

Legal Description:

Lot 6 Final Plat, Sanders Ridge PUD, as shown on plat of record in Plat Book 214, Page 37, in the Shelby County Register's Office to which plat of reference is hereby made for a more particular description of said property and being part of the same property conveyed to Sanders Ridge, GP in Warranty Deed of Record at Instrument No. 03083107, further recorded as Instrument No. 05163331, in the Register's Office of Shelby County, Tennessee.

The property is conveyed subject to subdivision restrictions, building lines and easements of record as set out in Plat Book 214, Page 37; Declaration of covenants, Conditions and Restrictions of record at Instrument Number 04171006; Easements of record at Instrument Numbers 03247629 and 04149778; all of record in the Register's Office of Shelby County, Tennessee.



# Tom Leatherwood
Shelby County Register

As evidenced by the instrument number shown below, this document has been recorded as a permanent record in the archives of the Office of the Shelby County Register.

```
07136288
08/30/2007 - 03:21 PM
7 PGS : R - MORTGAGE
DOROTHY   00517170-7136288
VALUE                           700000.00
MORTGAGE TAX                       801.70
                                     0.00
TRANSFER TAX                        35.00
RECORDING FEE                        2.00
DP FEE                               1.00
REGISTER'S FEE                       0.00
WALK THRU FEE                        0.00
TOTAL AMOUNT                       840.70
          TOM LEATHERWOOD
   REGISTER OF DEEDS SHELBY COUNTY TENNESSEE
```

160 N. Main St., Suite 519 ~ Memphis, Tennessee 38103 ~ (901) 545-4366
http://register.shelby.tn.us

_____(Space Above This Line For Recording Data)_____

Maximum principal indebtedness for Tennessee recording tax purposes is $0. Exact same collateral as prior debt. Does not increase principal indebtedness.

## LOAN MODIFICATION AGREEMENT
(Providing for Adjustable Interest)

This Loan Modification Agreement ("Agreement") made this **30th** day of **JUNE, 2008**, between **DONAL M. McDONAGH and MICHELE R. McDONAGH, husband and wife,** ("Borrower") and **TRUST ONE BANK** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated **August 29, 2007**, and recorded **August 30, 2007**, at Instrument Number **07136288**, in the Register's Office of Shelby County, Tennessee, (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property" located at

**2416 Sanders Ridge, Germantown, TN  38138**

(Property Address)

the real property described being set forth as follows:

**Lot 6, SANDERS RIDGE P.U.D., as shown on plat of record in Plat Book 230, Page 23, in the Register's Office of Shelby County, Tennessee, to which plat reference is hereby made for a more particular description of said property.**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

As of **June 30, 2008**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U. S. **$700,000.00** consisting of the amount(s) loaned to Borrower by Lender and any interest capitalized to date.

Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest shall be charged on the Unpaid Principal Balance at the initial yearly rate of **6.25%** from **June 30, 2008**, and as set forth in the Fixed/Adjustable Rate Rider attached hereto and incorporated herein by this reference. Borrower promises to make monthly payments of principal and interest of U. S. **$6,037.12** beginning on the first day of **August, 2008**, and as set forth in the Fixed/Adjustable Rate Rider attached hereto and incorporated herein by this reference, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on **July 1, 2023**, (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

Borrower will make such payments at **TRUST ONE BANK, 1715 Aaron Brenner Drive, Suite 100, Memphis, TN  38120**, or at such other places as Lender may require.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower also will comply with all other covenants, agreements and requirements of the Security Instrument, including, without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b) all terms and provisions of any adjustable rate or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

TRUST ONE BANK

By: _____
William Bryan Jones, Senior Vice President
Lender

_____
DONAL M. McDONAGH
Borrower

_____
MICHELE R. McDONAGH
Borrower

STATE OF TENNESSEE
COUNTY OF SHELBY

On this the 30th day of June, 2008, before me personally appeared DONAL M. McDONAGH and MICHELE R. McDONAGH, husband and wife, with whom I am personally acquainted, and who executed the foregoing instrument, and who acknowledged the execution of the same to be their free act and deed.

WITNESS my hand and notarial seal at office the day and year above written.

My Commission expires: 7/27/11.

_____
Notary Public

STATE OF TENNESSEE
COUNTY OF SHELBY

Before me, a Notary Public of the State and County aforesaid, personally appeared WILLIAM BRYAN JONES, with whom I am personally acquainted, and who, upon oath, acknowledged himself to be the SENIOR VICE PRESIDENT of TRUST ONE BANK, the within named bargainor, and that he as such SENIOR VICE PRESIDENT, executed the foregoing instrument for the purposes therein contained by signing the name of the Bank by himself as SENIOR VICE PRESIDENT.

WITNESS my hand and notarial seal at office this 30th day of June, 2008.

My Commission expires: 7-27-11

_____
Notary Public

THIS INSTRUMENT PREPARED BY
AND RETURN TO:
MID SOUTH TITLE SERVICES, LLC / THE HEWGLEY LAW FIRM
6305 Humphreys Boulevard, Suite 108
Memphis, Tennessee 38120

LOAN MODIFICATION AGREEMENT-Single Family-Fannie Mae Uniform Instrument    Form 3179 1/01    Page 2 of 2

File No.: 200806046

# FIXED/ADJUSTABLE RATE RIDER
(One Year Treasury Index - Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this **30th** day of **June, 2008**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to **Trust One Bank** ("Lender") of the same date and covering the property described in the Security Instrument and located at:

**2416 Sanders Ridge, Germantown, Tennessee 38138**
[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN THE BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT THE BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial fixed interest rate of **6.25%**. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the **first** day of **July, 2013**, and the adjustable interest rate I will pay may change on that day every **60th** month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **three** percentage points **(3.00%)** to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one-percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Loan No.:

**MULTISTATE FIXED/ADJUSTABLE RATE RIDER - ONE-YEAR TREASURY INDEX - Single Family - Fannie Mae Uniform Instrument**
Page 1 of 3                                                                                                 Form 3182  1/01

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **8.25%** or less than **6.00%**. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **12.25%**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in section a above, uniform covenant 18 of the security instrument shall read as follows:

   **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

   If all or any part of Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in section a above, uniform covenant 18 of the security instrument described in section b1 above shall then cease to be in effect, and the provisions of uniform covenant 18 of the security instrument shall be amended to read as follows:

   **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

   To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note

and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)            _____ (Seal)
                          Borrower                    DONAL M. McDONAGH                       Borrower

_____ (Seal)            _____ (Seal)
                          Borrower                    MICHELE R. McDONAGH                     Borrower

Loan No.:
**MULTISTATE FIXED/ADJUSTABLE RATE RIDER - ONE-YEAR TREASURY INDEX - Single Family - Fannie Mae Uniform Instrument**
Page 3 of 3                                                                                           Form 3182   1/01



# Tom Leatherwood
Shelby County Register

As evidenced by the instrument number shown below, this document has been recorded as a permanent record in the archives of the Office of the Shelby County Register.

